DU HADAWAY *v.* DRIVER.

Opinion delivered April 1, 1905.

JUDICIAL SALE—CONFIRMATION.—Confirmation of a judicial sale raises a presumption of regularity in the sale which will prevail where the evidence attacking it is conflicting.

Appeal from Mississippi Chancery Court.

EDWARD D. ROBERTSON, Judge.

Affirmed.

STATEMENT BY THE COURT.

The tract of land in controversy owned by appellants, who were nonresidents of the State, was embraced in a suit brought by the Board of Directors of St. Francis Levee District, in the Chancery Court of Mississippi County, to condemn lands for sale for payment of unpaid levee taxes, and a decree was duly entered in accordance with the prayer of the complaint condemning this and numerous other tracts of land to be sold by the commissioner of the court.   Appellee was clerk of the court and commissioner, and advertised the lands in accordance with the terms of the

decree, and proceeded to make the sales thereunder at a public place in the court house where many persons were in attendance. At the succeeding term of court he made report of his sales; the same was confirmed by the court; and he executed deeds to the respective purchasers pursuant thereto. This and two other tracts were reported and confirmed as having been sold by the commissioner to one H. C. Tucker, who afterwards conveyed all three tracts to appellee for a consideration of $350 cash expressed in the deed.

Subsequently appellants filed their complaint in equity against appellee to set aside said conveyances, and alleged therein that said tract of land was not in fact sold nor offered for sale by appellee as commissioner, but that the pretended sale was a private transaction between appellee and Tucker, the alleged purchaser, and that "in the pretended purchase of said land by said Tucker he was the agent and instrument employed by the defendant to receive the deed of conveyance in his name for the purpose and with the intention at the time of conveying said land to defendant."

The defendant answered, denying the allegations of the complaint, and stating that the sale of the land was duly and in good faith made to Tucker, as recited in the report, and order of confirmation. Upon final hearing the court dismissed the complaint for want of equity, and the plaintiffs appealed.

*J. T. Coston* and *C. T. Coleman,* for appellants.

The finding of the chancellor is against the weight of the evidence, and should be reversed. 53 Ark. 81; 4 Port. 283; 30 Am. Dec. 525; 12 Ill. 128; 22 W. Va. 678; 26 Id. 558. Administrators purchasing at their own sales will be held as trustees. 49 Ark. 75; 55 Ark. 85; 34 Ark. 73; 46 Ark. 25; 58 Ark. 84; 48 Ark. 248.

McCULLOCH, J., (after stating the facts.) The question presented here is one purely of fact; and the testimony is practically narrowed down to four witnesses,—two on each side. Two witnesses, R. E. Lee Wilson and Reg. Archillion, introduced by plaintiff, testify that they attended the sale by the commis-

sioner, and had marked this tract of land, which was commonly known as the Price land, with the intention of buying it, but that it was not offered by the commissioner. They stated that they remained at the sale until the bottom of the advertised list of lands had been reached, except some town lots, when they, with many others, left the room.

Appellee and Tucker both testified that this land and two other tracts were offered and publicly sold by the commissioner to Tucker, as reported to the court. Several other witnesses testified that Tucker was present at the sale, and bid for some tracts, but they could not remember the particular tracts for which he bid, nor whether he bought any of the tracts. Two of the witnesses say that Tucker told them as they left the place of sale that he had bought some land "out in Egypt," the name by which the neighborhood in which this land was commonly designated.

Of the four witnesses whose testimony is direct upon the issue, only one—Archillion—appears to be without interest in the suit. The firm of which Wilson is a member has purchased the lands from appellants, and he and his co-partners are the real parties in interest. On the other hand, Tucker may be said to be an interested witness, as his conduct is called in question by the suit. None of the witnesses have been impeached or otherwise discredited, except that Tucker is contradicted concerning the alleged use of the money he claims to have received as purchase price from appellee.

The two witnesses for appellant—Wilson and Archillion—testify positively that they took special notice of the fact that this land was not sold, and had reason for doing so; yet their testimony is to some extent of a negative character; as it is possible that, in a crowded place where a large number of tracts of land are rapidly sold, which is usually the case at tax sales, their attention might have been momentarily distracted, so as not to become aware of the sale of a particular tract. Appellee and Tucker both swear positively that the tract was sold, and it is our duty, if possible, to so reconcile the testimony of all the witnesses as to give due credit to each without rejecting the testimony of either. Appellants urge the improbability of Tucker having bought the land, as he was a young man only 22 years

old, and without means; but other disinterested witnesses say
that Tucker bid for lands at the sale, and appellants concede that
he bought two other tracts.

Upon the whole, we cannot say that there is a preponderance
of testimony in favor of appellant's claim that the commissioner
did not sell the land.   The report of sale and decree of confirma-
tion are *prima facie* evidence that the land was sold, and places
the burden of proof to the contrary on one who attacks the sale.
The chancellor found that the preponderance was not in favor
of the plaintiffs, and we do not think that the testimony justifies
us in disturbing his finding.

So the decree is affirmed.